Case 3:17-bk-33245-SHB   Doc 71-2   Filed 04/03/18   Entered 04/03/18 11:33:12   Desc
proof of claim   Page 1 of 22
Case 3:17-bk-33245-SHB   Claim 5   Filed 02/22/18   Desc Main Document   Page 1 of 22

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Deanne Elizabeth Vinsant |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern District of Tennessee |
| Case number | 3:17-bk-33245-SHB |

FILED

FEB 2 2 2018

U.S. BANKRUPTCY COURT
Knoxville, Tennessee

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

PHR, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    Parnick Rogers

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

c/o Carlos A. Yunsan, Esq.
Name

217 E. Broadway Avenue
Number     Street

Maryville          TN      37804
City               State   ZIP Code

Contact phone  (865) 982-7650

Contact email  cyunsan@kizer-black.com

Where should payments to the creditor be sent? (if different)

Name

Number     Street

City               State   ZIP Code

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Case 3:17-bk-33245-SHB    Doc 71-2    Filed 04/03/18    Entered 04/03/18 11:33:12    Desc
proof of claim    Page 2 of 22
Case 3:17-bk-33245-SHB    Claim 5    Filed 02/22/18    Desc Main Document    Page 2 of
22

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   8  6  8  5

7. How much is the claim?    $_____17,550.00 . Does this amount include interest or other charges?

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Complaint filed in state court against debtor for breach of contract

9. Is all or part of the claim secured?

☑ No

☐ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured:    $_____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

10. Is this claim based on a lease?

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. Is this claim subject to a right of setoff?

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   02/19/2018
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Carlos | A. | Yunsan |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Kizer & Black, Attorneys, PLLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 217 E. Broadway Avenue | | |
| | Number       Street | | |
| | Maryville | TN | 37804 |
| | City | State | ZIP Code |
| Contact phone | (865) 982-7650 | Email | cyunsan@kizer-black.com |

## IN THE GENERAL SESSION COURT OF BLOUNT COUNTY

IN RE:

PHY, LLC

        Plaintiff

V

Deanne Vinsant

        Defendant

Case No. CV14487

NOTICE OF DEFENDANT

FILING BANKRUPCTY

```
┌─────────────────────────────┐
│          FILED              │
│       OCT 2 6 2017          │
│       TOM HATCHER           │
│  GENERAL SESSIONS COURT     │
└─────────────────────────────┘
```

Defendant, Deanne Vinsant, hereby give Notice of Defendant filing Bankruptcy proceedings in

the Eastern District of Tennessee on October 26, 2017.  Attached hereto is a copy of Bankruptcy.

Dated this 26, Day of October, 2017

                                       Deanne Vinsant, Defendant

Case 3:17-bk-33245-SHB    Doc 71-2    Filed 04/03/18    Entered 04/03/18 11:33:12    Desc
Case 3:17-bk-33245-SHB    Claim 5    Filed 02/22/18    Desc Main Document    Page 5 of
proof of claim    Page 5 of 22
22

Notice hereby sent to:

Blount County General Session Court



Carlos A. Yunsan
VIA Fax and First Class Mail
329 Cates Street
Maryville, TN 37801

United States Bankruptcy Court
Eastern District of Tennessee

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed
below was filed under Chapter 13 of the United
States Bankruptcy Code, entered on 10/26/2017 at
11:14 AM and filed on 10/26/2017.



**Deanne Elizabeth Vinsant**
P.O. Box 4482
Maryville, TN 37802
SSN / ITIN: xxx-xx-8685

The bankruptcy trustee is:

**Gwendolyn M Kerney**
Chapter 13 Trustee
P. O. Box 228
Knoxville, TN 37901
(865) 524-4995

The case was assigned case number 3:17-bk-33245-SHB to Judge Suzanne H. Bauknight.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other
actions against the debtor and the debtor's property. Under certain circumstances, the stay may be
limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.
If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be
penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are
available at our *Internet* home page http://www.tneb.uscourts.gov/ or at the Clerk's Office, United States
Bankruptcy Court, Howard H. Baker Jr. U.S. Courthouse, Suite 330, 800 Market Street, Knoxville, TN
37902.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting
forth important deadlines.

**William T. Magill**
**Clerk, United States**
**Bankruptcy Court**

**K&B**

KIZER & BLACK

329 CATES STREET
MARYVILLE, TENNESSEE 37801-4903
TELEPHONE: (865) 982-7650
FACSIMILE: (865) 982-5776

WWW.KIZERBLACK.COM

September 21, 2017

WRITER=S DIRECT LINE:  (865)980-1612
WRITER=S DIRECT FAX: (865) 980-6143

**VIA FASIMILE 865-273-5424**
**AND REGULAR MAIL**

Tommy Hatcher
Blount County Circuit Court Clerk
Blount County Justice Center
926 E. Lamar Alexander Pkwy.
Maryville, TN 37804

Re:    *PHR, LLC v. Deanne Vinsant*
       *Blount County General Sessions Court No. CV14487*

Dear Mr. Hatcher:

The above-referenced matter is presently set for hearing on Friday, September 22, 2017 at
9:00 a.m. before Judge Headrick.  By agreement of the parties, this matter is reset to
Friday, October 27, 2017 at 9:00 a.m. to allow the parties to attempt to resolve the matter.

Thank you for your assistance.   If you have any questions, do not hesitate to contact me.

With kindest regards, I am

Very truly yours,

Carlos A. Yunsan

CAY:emb

cc:    PHR, LLC
       Deanne Vinsant
       Chrystal Keller
       Daniel Keller

Case 3:17-bk-33245-SHB   Doc 71-2   Filed 04/03/18   Entered 04/03/18 11:33:12   Desc
proof of claim / Page 8 of 22
Case 3:17-bk-33245-SHB   Claim 5   Filed 02/22/18   Desc Main Document   Page 8 of
22

MEMORY TRANSMISSION REPORT

```
                                         TIME      :09-21-2017 11:08
                                         FAX NO.1  :8659806143
                                         NAME      :KIZER AND BLACK
```

```
FILE NO.          :  443
DATE              :  09.21 11:07
TO                :  ☎ 92735424
DOCUMENT PAGES    :  1
START TIME        :  09.21 11:07
END TIME          :  09.21 11:08
PAGES SENT        :  1
STATUS            :  OK
```

***SUCCESSFUL TX NOTICE***



### KIZER & BLACK, ATTORNEYS, PLLC

329 CATES STREET
MARYVILLE, TENNESSEE 37801-4903
TELEPHONE: (865) 982-7650
FACSIMILE: (865) 982-5776
WWW.KIZERBLACK.COM

September 21, 2017

WRITER'S DIRECT LINE: (865)980-1612
WRITER'S DIRECT FAX: (865) 980-6143

**VIA FASIMILE 865-273-5424**
**AND REGULAR MAIL**

Tommy Hatcher
Blount County Circuit Court Clerk
Blount County Justice Center
926 E. Lamar Alexander Pkwy.
Maryville, TN 37804

*Re:    PHR, LLC v. Deanne Vinsant*
        *Blount County General Sessions Court No. CV14487*

Dear Mr. Hatcher:

The above-referenced matter is presently set for hearing on Friday, September 22, 2017 at 9:00 a.m. before Judge Headrick.   By agreement of the parties, this matter is reset to Friday, October 27, 2017 at 9:00 a.m. to allow the parties to attempt to resolve the matter.

Thank you for your assistance.   If you have any questions, do not hesitate to contact me.

With kindest regards, I am

Very truly yours,

Carlos A. Yunsan

CAY:emb

cc:    PHR, LLC
       Deanne Vinsant
       Chrystal Keller
       Daniel Keller

Docket No. __CV14487__

Plaintiff(s)  PHR, LLC
_____151 Keeble Avenue_____
_____Knoxville, TN 37920_____
Pl Atty  Carlos A. Yunsan_____  Tel # 865-980-1612

VS

Defendant(s)  Deanne Vinsant
_____519 Sherwood Drive_____
_____Maryville, TN 37801_____

Officers Return:

☑ I certify that I have served this Summons by reading same to all Defendants named above or by _Personally Served Deanne Vinsant At her home._

and citing ☐ Defendant ☐ Defendants for trial on the _30_th day of _June_, 2017, at _9:00_ A.M
☐ Diligent search made and Defendant(s) not to be found in my county, because ___RECD JUN 15 2017___

Date of Service: _June 15, 2017_
(Sheriff/Deputy) _Melissa Willockes_

# Civil Warrant **ALIAS**   COPY   Tom Hatcher
## State of Tennessee, County of Blount   General Sessions Court Clerk

TO ANY LAWFUL OFFICER TO EXECUTE AND RETURN:

Summon the named Defendant(s) to appear in the Blount County General Sessions Court, at the Blount County Justice Center to answer a civil suit being brought by the named Plaintiff(s), for $ _under $25,000_ as indicated below, in an action based on: _breach of contract for management of property located at 221 Amerine Avenue, Maryville_ _Tennessee 37804 (a copy of the Rental Agreement is attached hereto)._

Issued this _20_ day of _April_ 20 _17_.

Tom Hatcher, Clerk of the General Sessions Court
by: _____ D.C.

## JUDGMENT ON THE ABOVE COMPLAINT

☐ Contested  ☐ Agreed  ☐ Default  ☐ Plaintiff's reported agreement
☐ Judgment in the amount of $_____ and all costs and taxes is granted to Plaintiff(s) against Defendant(s) _____ for which execution may issue.
☐ Dismissed _____ prejudice. Cost are taxed to _____
Basis for dismissal:
☐ Findings in favor of Defendant(s) after trial.          ☐ Plaintiff's non-suit.
☐ Plaintiff's failure to prosecute.                              ☐ Compromised and settled
☐ Officer's return no to be found.                              ☐ Paid before Court.

This _____ day of _____, 20_____,          Judge: _____

## INSTALLMENT PAYMENT ORDER

_____ is allowed to pay judgment and costs at the rate of $_____
beginning _____, Garnishment stayed pending compliance with this order.

This _____ day of _____, 20_____,          Judge: _____

OTHER ORDERS: _____

_____

_____

_____

This _____ day of _____, 20_____.      Judge_____

## NOTICES TO DEFENDANT(S)

1.  This is **NOT** a **CRIMINAL WARRANT** or **CRIMINAL CASE**. You will not be sent to jail for not going to court. Hearings will be at the Blount County Justice Center.

2.  If you do not come to court when required, a **default** judgment may be entered against you for all sums demanded and court costs.

3.  If you have not tried to resolve your differences with Plaintiff(s), you should try to do so with his attorney

4.  (or Plaintiff if he has no attorney) before coming to court. Any resolution must consider payment of taxes and court costs.

5.  **Information about courts dates:** If your differences cannot be resolved, the case most likely will **NOT** be tried on the first date you are to come to court, but a trial date will then be fixed. The court may:

    a.  enter an agreed judgment if you agree with Plaintiff(s) as to the amount owed; or
    b.  set the case for trial on a later date; or
    c.  conduct a trial if both parties are prepared **and** if it appears to the Court that the hearing will be short, and time permits; or
    d.  enter a **default** judgment against you for all sums demanded and court costs if you fail to appear.

6.  If Plaintiff says his suit is bases on a **SWORN ACCOUNT**, and if you deny owing the amount claimed, you will not be permitted to contest Plaintiff's claim unless you deny the correctness of the account in writing, under oath. Your **SWORN DENIAL** should state what amount you think you do owe. It must be filed with the Clerk. A copy must be sent to and received by Plaintiff ( or his attorney ) before the trial date. Failure to comply with this procedure may result in the entry of a judgment against you, unless you show good cause for more time to comply.

7.  **Rights granted by TCA 26-2-114:** Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

**AFFIDAVIT:** To the best of my information and belief, after investigation of Defendant's employment, I hereby make affidavit that the Defendant is/is not a member of a military service.

_____      _____
Attorney for Plaintiff or Plaintiff        Notary Public

                                    _____
                                    My Commission Expires

Case 3:17-bk-33245-SHB    Doc 71-2    Filed 04/03/18    Entered 04/03/18 11:33:12    Desc
Case 3:17-bk-33245-SHB    Claim 5-1    Filed 02/22/18    Desc Main Document    Page 11 of
proof of claim    page 11 of 22
22

## RENTAL AGREEMENT

**1. PARTIES.** This Residential Rental Agreement between ABC Professional Management, Inc. as Agent for Owner of 221 Amerine Ave, Maryville, TN 37804 ("Landlord") and Daniel Keller and Chrystal Davila, hereinafter called Tenants, jointly and/or severally, and shall be binding on each signatory, their heirs, and assigns until the termination of this Rental Agreement as stipulated in the terms and conditions below.

**2. PREMISES.** The Landlord agrees to rent the property located at 221 Amerine Ave, Maryville, TN 37804, hereinafter called Premises.

**3. TERM.** The term of this Rental Agreement shall be for Twelve (12) months and zero (0) days and shall commence on June 1, 2015 and expire May 31, 2016

**4. RENT.** Tenants hereby agree to pay Landlord, upon execution hereof, Thirteen thousand eight hundred dollars ($13,800.00) payable in equal monthly installments of $1150.00 per month for the term of this Rental Agreement payable in advance on the first day of the month without previous written demand thereof
4.1. Tenants shall pay Landlord rent in the amount of $0000 for the partial month beginning, NONE and ending NONE payable the first day of the month following execution of this Rental Agreement
4.2. The rental payment shall be made payable to "Asset Realty Management" at PO Box 4482, Maryville, TN 37802,
**4.3. Tenants hereby specifically waives his/her right to written notice by Landlord for nonpayment of rent.**
4.4. In the event that Tenant is late with the rent payment at any time or if the Tenants breach any terms of this agreement, the security deposit may be forfeited.
4.5. The rent includes appliances in the dwelling at commencement of the Rental Agreement as follows (circle): (Washer/Dryer units made available are not a condition of this lease and will not be repaired or replaced).
Refrigerator  Stove  Disposal  Dishwasher  Wall/Window  AC/Heat Unit  Other _____.

**5. LATE FEE AND RETURNED CHECKS.** In the event rent is not paid by the fifth day of the month, a 10% late fee will be charged to Tenants. If the 5th day of the month falls on a Sunday or legal holiday, the 10% late fee will be charged if the rent is not paid by the end of the next business day.
5.1. In the event a Tenants' check is returned for any reason, Tenants agree to pay a $30 service charge in addition to the late fees. Returned checks must be redeemed by Cashier's Check, Certified Check, or Money Order. All future rents and charges will be paid by Cashier's Check, Certified Check, or Money Order.

**6. RENEWAL PROVISION.** It is understood and agreed that this lease shall terminate on the last day to the term hereof; provided, however, that failure of either party to give the other written notice thirty (30) days in advance of the expiration of this lease of a desire to cancel or modify the terms hereof shall serve to renew this lease for a period of one month from the end of the term hereof, and shall continually thereafter serve to renew this lease for successive periods of one month upon all the terms and conditions contained herein with the exception that Landlord may raise the rent to the then-current rental rate.

**7. HOLD OVER.** Tenants shall remove all of Tenants' property and deliver possession of the Leased Premises in a clean condition and good order and repair to Landlord upon termination of this agreement. In the event the Tenants fail to vacate the Leased Premises after termination, or non-renewal of this rental agreement, then Tenants shall pay Landlord an amount equal to three times the existing rental rate, prorated by the day for each day held over and beyond the termination or expiration of this agreement in addition to the other damages provided for under this agreement. After termination or non-renewal of this agreement, Tenants shall be deemed to be a tenant at will and is subject to immediate eviction processing without further notice.

**8. SECURITY DEPOSIT.** Tenants shall pay Landlord $1150.00 as a security deposit for fulfillment of the conditions of this agreement, of which $300.00 is a non-refundable cleaning fee. Deposit will be returned to Tenants if: a) the Lease term has expired or this Rental Agreement has been terminated by both parties; and b) Tenants have paid all monies owed to Landlord; and c) Leased Premises is not damaged and is returned to Landlord in its original condition, normal wear and tear excepted. Landlord shall have the right to apply the security deposit to satisfy all or part of Tenants' obligations, and such act shall not preclude or bar Landlord from claiming damages in excess of the security deposit. Tenants' security deposit will be deposited by Landlord in a separate account set up for that purpose at Suntrust (Bank). Tenants agree that any interest earned on Tenants' security deposit shall belong to Landlord and that Tenants will not be

Revised April 2015                                        1

Tenants Initials _____
Landlord/Agent Initials _____

3223851.2

entitled to receive payment of or any credit for any such interest earned on the security deposit. Tenants have the right to inspect the Leased Premises to determine the Tenants' liability for physical damages that are the basis for any charge against the security deposit. On the day Tenants completely vacate the Leased Premises or within four (4) calendar days of vacating, Landlord shall inspect the Leased Premises and compile a comprehensive listing of any damage to the unit which is the basis for any charge against the security deposit and the estimated dollar cost of repairing such damage. If Tenants have requested a mutual inspection, Tenants may inspect the Leased Premises to ascertain the accuracy of such listing. Landlord and Tenants shall sign such listing, which signature shall be conclusive evidence of the accuracy of such listing. If Tenants shall refuse to sign such listing, Tenants shall state specifically in writing any items on the list to which he/she/they dissents and shall sign such statement of dissent. If Landlord provides written notice of Tenants' right to be present at the Landlord's inspection and Tenants schedule an inspection, but fail to attend such inspection, Tenants waive the right to contest any damages found by Landlord as a result of such inspection. If Tenant has (i) vacated without giving written notice; (ii) abandoned the Leased Premises; (iii) been judicially removed from the Leased Premises; (iv) not contacted Landlord after Landlord's notice of right to mutual inspection of the Leased Premises; (v) failed to appear at the arranged time of inspection; or (vi) Tenants have not requested a mutual inspection or is otherwise inaccessible to Landlord, Landlord may inspect the Leased Premises and compile a comprehensive listing of any presently ascertainable damage to the unit that is the basis for any charge against the security deposit and the estimated dollar cost or repairing the damage without providing the Tenant the opportunity to inspect the Leased Premises. Upon the Tenants' request, Landlord shall mail a copy of the listing of damages and estimated cost of repairs to Tenant at the last known mailing address for Tenant. Should Tenants vacate the Leased Premises with unpaid rent or other amounts due and owing, Landlord may remove the deposit from the account and apply the monies to the unpaid debt. In the event Tenants leave owing no rent and has a refund due, Landlord shall send notification to the last known or reasonably determinable address for Tenants of the amount of any refund due Tenants. In the event Landlord shall not have received a response from Tenants within sixty (60) days from the sending of such notification, Landlord may remove the deposit from the account and retain it free from any claim of Tenants or any person claiming on behalf of Tenants. In the event there are damages to the unit, and notice has been sent to Tenants, but Tenants do not notify Landlord of Tenants' dissent as outlined in this Paragraph, then Landlord may use those funds in the escrow account to pay for damages incurred to the unit. This paragraph does not preclude Landlord from seeking any other damages, including unpaid rent, from Tenants. Deposit may be applied by Landlord to satisfy all or part of Tenants' obligations and such act shall not prevent Landlord from claiming damages in excess of the deposit. Tenants have no right to apply the deposit to any rent payment.

**9. PETS.** Tenants agree that without prior written consent from the Landlord, no animal of any kind shall be permitted in the Leased Premises. There is a $500 fee payable immediately if Tenants brings a pet on the Premises without prior written approval from the Landlord.

9.1. Should Landlord consent be obtained prior to execution of this Rental Agreement, Tenants agree to pay a ONE TIME NON-REFUNDABLE PET FEE as well as an on-going monthly fee per pet.

9.2. In the event Tenants acquire a pet subsequent to the execution of this Rental Agreement, the Landlord, at Landlord's sole discretion, has the right upon fourteen (14) days written notice to Tenants to require that Tenants immediately remove said pet from the Leased Premises.

9.3. In the event Tenants acquires a pet subsequent to the execution of this Rental Agreement and Landlord's written consent has been obtained, Tenants agree to pay a ONE TIME NON-REFUNDABLE PET FEE as well as an on-going monthly fee per pet.

9.4. Should Tenants fail to pay the pet fee, in cases where the pet is acquired subsequent to the execution of this Rental Agreement, or fail to remove the pet from said Leased Premises after fourteen (14) days notice, such failure shall constitute an immediate breach of this Rental Agreement.

9.5. Tenants agree that under no circumstances will pets that may exceed a full grown weight of 25 pounds be permitted in the Leased Premises.

9.6. The following dog breeds are not allowed on any properties:  Pit Bull, Chow, Rottweiler, Shar Pei, Wolf Hybrids, Presa Canario, and Akita.

9.7. The Pet Agreement must accompany this Rental Agreement.

**10. INSURANCE.** Tenants understand and agree that Landlord is not responsible for, and will not provide fire, theft or casualty insurance for the Tenants' personal property. Landlord will not be responsible for any loss to personal property due to fire, theft, or any other damages due to act of nature. **Tenants are not a co-insured, an implied co-insured, beneficiary or implied beneficiary on any policy of casualty insurance obtained by Landlord or any agent of Landlord on the premises.**

10.1. Renters Insurance. Tenants shall be responsible for carrying its own contents insurance, covering all of the personal and business property owned or rented by the Tenants located on or in the Premises, Building and on the Property. Tenant understands that it is the Tenant's responsibility to obtain Renter's Insurance to cover their personal

Tenants Initials
Landlord/Agent Initials

3223851.2

Case 3:17-bk-33245-SHB   Doc 71-2   Filed 04/03/18   Entered 04/03/18 11:33:12   Desc
Case 3:17-bk-33245-SHB   Claim 9   Filed 02/22/18   Desc Main Document   Page 13 of
proof of claim   Page 13 of 22
22

property due to loss.

**11. POSSESSION.** If there is a delay in delivery of possession by Landlord, rent shall be abated on a daily basis until possession is granted. Landlord shall not be liable for damages for delay in possession.

**12. AGENT.** Owner has authorized Asset Realty Management, Inc. to enter into this Rental Agreement on the Landlord's behalf, manage the Premises, and collect the rent and security deposit. Agent is authorized to accept service of process and for receipt of notices and demands. Agent's address is PO Box 4482, Maryville, TN 37802, (865) 865-268-9133

**13. USE OF PREMISES.** Apartment shall be used for residential purpose only and shall be occupied only by the persons named in Tenants' application to lease. Apartment shall be used so as to comply with all state, county and municipal laws and ordinances. Tenants shall not use apartment or permit it to be used for any disorderly or unlawful purpose or in any manner so as to interfere with other resident's quiet enjoyment of their homes. Tenants shall not cause or permit any waste, damage, or injury to the leased premises. Tenants are and shall be responsible and liable for any injury done to the leased premise, or the apartment complex in which the same are located, by Tenants, his invitees, and unauthorized occupant or other persons whom Tenants permits to be in or about the lease premises. Tenants agree to return same in good condition and repair, fair wear and tear expected. Tenants shall not use said premises for any purpose other than as an apartment dwelling or use or permit anything upon said premises that will invalidate the insurance on the building or increase the rate thereof, or in any manner deface or injure the BUILDING OR ANY PART THEREOF OR OVERLOAD THE FLOORS (waterbed not permitted), or permit any objectionable noise or odor to escape, or to permit or create a nuisance or to disturb any other resident in the building, or in any way injure the reputation of the apartment. Tenants shall comply with all governmental, health, and police requirements and regulations respecting said premises.

**14. ALTERATIONS, ADDITIONS, OR IMPROVEMENTS.** No alteration, addition, or improvement to the lease premises shall be made by the Tenant without written consent of the Landlord. Any alteration, addition, or improvement so made by the Tenant shall, at the Landlord's option, become the property of the Landlord upon the expiration or sooner termination of this lease, provided, however, that the Landlord shall have the right to require the Tenant to remove such alterations, additions, or improvements at the Tenant's cost upon such termination of this lease and return the leased premises to their original condition.

**15. PROPERTY CONDITION.** By signing this Rental Agreement, Tenants acknowledge that the unit is clean and in good habitable condition, and Tenants shall take possession of the Premises in the "AS IS - WHERE IS" condition except for items as stated herein or on the attached "Move-In Inspection Report" and Tenant(s) also agree that the Landlord has made no promises to decorate, alter, repair, or improve the unit except as stated herein.

**16. TENANTS' MAINTENANCE.** Tenants shall be responsible for maintenance and repair of broken glass in the windows and in the glass doors, fire extinguishers, smoke detectors, alarms, insect & pest control, lawn and shrubbery of single family residence dwellings, ice and snow removal on the porches, steps and sidewalks directly in front of and servicing the Premises, replacement of all light bulbs in the Premises.
16.1. Tenants shall maintain the Premises in a clean, safe condition and sanitary manner, and in the same condition as received other than ordinary wear and tear, including all equipment, appliances, plumbing fixtures, furnishings provided by Landlord therein, except as otherwise stated herein. Any damage or change to the Premises which is caused by the Tenants or Tenants' invitee's of which Tenants shall be responsible to pay for.
16.2. Tenants also agree to accept the attached "Move-In Inspection Report" as the basis for occupancy, and any termination charges for damages, cleanliness and habitable conditions.
16.3. Tenants shall maintain the Premises as to protect against any plumbing freezing and Tenants shall be responsible to repair all damage as a result of any plumbing freezing due to Tenants' negligence.
16.4. Tenants shall keep the exterior, and any common areas, clear of Tenants' rubbish, garbage, or trash.
16.5. Tenant shall be responsible for retaining keys and remote entry devices to premises until move-out. There will be a $50 charge per item should Tenants need to replace a key or remote device or Tenants failure to return. There will be a $50 charge should the Landlord have to come out to let Tenants into property (i.e., "lock-out").
16.6. Landlord is not responsible for any damage or loss to personal property or for personal items of Tenants.
16.7. Tenants shall notify Landlord immediately of any items which present an unsafe environment or which require repair and/or attention (i.e. plumbing issues, leaks, mold). Tenants shall be responsible for additional damages caused by Tenants failure to notify Landlord immediately.
16.8. Tenants shall be responsible for replacing air filters on Premises. Landlord recommends replacing monthly in order to keep down Tenants' utilities costs.

Tenants Initials
Landlord/Agent Initials

Case 3:17-bk-33245-SHB    Doc 71-2    Filed 04/03/18    Entered 04/03/18 11:33:12    Desc
Case 3:17-bk-33245-SHB    Claim 5-1    Filed 02/22/18    Desc Main Document    Page 14 of 22
proof of claim    Page 14 of 22

16.9. In Properties where Landlord has provided a fire extinguisher, this shall remain on site; Tenants shall be responsible for replacing any fire extinguisher if missing upon move-out at the cost of $75 each.

**17. LANDLORD'S MAINTENANCE.** Landlord shall be responsible for maintenance and repair of the electrical systems, heating and air conditioning systems, plumbing system, mechanical systems, appliances, interior walls, doors, door knobs, ceilings, mailboxes, driveways (except snow and ice removal), lawns and shrubbery (of multi-family residence dwellings only), exterior roof, gutters, down spouts, exterior walls, and the structural foundation and all other items which would otherwise be required to be maintained by Landlord, except those items specifically stated herein to be maintained by Tenants in Article 17 above, except that damage or change to the Premises which is caused by the Tenants or Tenants' invitee's of which Tenants shall be responsible to pay for. Landlord shall not provide nor maintain fire extinguishers (unless otherwise required), alarms, the mini window blinds or weather stripping around the doors.

17.1. Landlord shall not be liable for any failure, damage, loss or injury resulting from any interruption or failure of any utility service provided by any local utility company on or to the Premises including but not limited to electric currents, gas, water supply, sewer, telephone, or cable; for any injury or damage to personal property caused by storms or disturbances of the weather, or water, rain, or snow, which may leak or flow from the street, sewer, gas mains, or any surface area, or from any part of the building of which the Premises form a part.

17.2. Landlord assumes no responsibility to Tenants or outside third parties in case of non-repair, until Tenants notifies Landlord in writing of such need repair and until Landlord has had a reasonable length of time thereafter in which to make the repairs.

**18. LANDLORD'S RIGHT OF ACCESS TO THE LEASED PREMISES.** Tenants understand and agree Landlord and Landlord's agents shall have the right at all reasonable times with reasonable notice during the term of this lease and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and any improvements thereon to protect life and prevent damage to the property and for the purposes of making any repairs, additions or alterations as may be deemed appropriate by Lessor for the preservation of the Premises. In case of emergency, Landlord and its agents may enter the Leased Premises at any time without Tenant's consent. Emergency shall mean a sudden, generally unexpected occurrence or set of circumstances demanding immediate action. Even where no known emergency exists, Landlord shall be permitted to enter the Leased Premises where any utilities have been turned off due to no fault of Landlord. Landlord may inspect the Leased Premises to ascertain any damages and make necessary repairs of damages resulting from lack of utilities. Landlord is authorized to show the Leased Premises to prospective tenants during the final thirty (30) days of the termination of the rental agreement provided that notice is given to Tenants at least twenty-four (24) hours prior to entry. Tenants may not change any locks on the Leased Premises or add additional locking device to the Leased Premises without written consent of Landlord. Tenants agree to notify Landlord of any anticipated extended absence in excess of seven (7) days on or before the first day of the extended absence. During said absence, Landlord is specifically authorized to enter the Premises at all times reasonably necessary. If Tenants willfully fails to give notice of extended absence, Landlord may recover actual damages from Tenants. Landlord shall have, at all times, the right to place on the Leased Premises signs advertising the sale of the Leased Premises or property in the event Landlord is attempting to sell the property.

**19. COMMON AREA.** Landlord shall have exclusive control of all of the Building and Property at all times during the term of this Rental Agreement except as specifically stated herein giving Tenants limited control of certain parts of the Premises, Building, and Property.

19.1. Tenants shall have exclusive use of the driveway or designated parking areas for Tenants and Tenants' guest and invitees. No Tenants, Tenants guest, or invitee may leave an inoperable vehicle on premises for more than 30 days. Said vehicles are subject to towing at the Tenants' and/or vehicle owners expense.

19.2. Guests and invitees are allowed to park on premises, in designated visitor parking areas, only when visiting Tenants and for no longer than three (3) days per month.

19.3. Tenants shall have the right to place typical deck furniture on the deck or front porch in a safe manner, unless the furniture causes a hazard for walkways.

19.4. Tenants shall not place or store any items on the grass, and Landlord shall have the right to remove all items on the grass from the Property at any time without notice to Tenants, and the Tenants shall be charged for the removal of said items.

19.5. Tenants acknowledge there is limited parking space on the Property and Tenants shall be limited to number of vehicles on the Property at any one time, including Tenants, and Tenants' invitees. If at a later date Landlord determines, at Landlord sole discretion, Tenants have more than the allowed vehicles on the Property and/or Tenants' use of the Premises is causing a problem with parking, Landlord can terminate this Rental Agreement by giving the Tenants thirty day prior written notice of the date of termination.

19.6. Landlord shall keep all rights to determine at a later date the placement of trash-rubbish containers. Landlord shall

Tenants Initials
Landlord/Agent Initials _____

Case 3:17-bk-33245-SHB   Doc 71-2   Filed 04/03/18   Entered 04/03/18 11:33:12   Desc
Case 3:17-bk-33245-SHB   Claim 5-1   Filed 02/22/18   Desc Main Document   Page 15 of
proof of claim   Page 15 of
22

have the right to determine the location of all mailboxes.

19.7. Tenants shall not obstruct access to: mailboxes, trash bins, entrance ways or sidewalks. Vehicles obstructing these areas are subject to tow at the Tenants' and/or vehicle owner's expense.

**20. UTILITIES & SERVICES.** Tenants agree to pay for: all connection fees, services and utilities, including electric, gas, sewer, water, cable and telephone. Landlord shall pay for: no utilities unless otherwise stated in this Rental Agreement.

20.1 Tenants shall be responsible to provide and pay all cost for the access and installation of Tenants' telecommunication and cable equipment subject to all terms contained herein.

20.2. Tenant must maintain utility services for Premises for the entire duration of this Rental Agreement, unless otherwise approved by Landlord. At no time during occupancy may utility services be disconnected by Tenant.

20.3. Failure to connect, subscribe to, or maintain all necessary basic Utilities and Services for said Premises may result in termination of the Lease, a fine to Tenant, in addition to reimbursing Landlord for utility usage charges.

**21. RULES & REGULATIONS.** Tenants agree that the Premises is to be occupied only by those persons named in the application and this Rental Agreement. Said Premises shall be used in compliance with all state, county, and municipal laws and ordinances.

21.1. Guests staying more than a total of 15 days in a calendar year shall be considered occupants and not guests.

21.2. Tenants shall act and require other persons on the Premises with Tenants' consent, to act in a manner that will not disturb the neighbor's peaceful enjoyment of the Premises.

21.3. Tenants shall not make any alterations, additions or improvements to the Premises without the prior written consent of the Landlord.

21.4. Tenants shall not place any reflective coating film on the windows.

21.5. Tenants shall not glue or attach any item to the walls or doors of the Premises, and major scuff marks and stains on the walls shall not be considered normal wear and tear and if Tenants does any of the aforementioned, the Tenants shall be responsible to have all of the walls of the Premises repainted upon termination of this Rental Agreement.

21.6. If Tenants place wall covering on the walls or paints the walls any color other than an "off white" color, Tenants shall be responsible to remove, or to have removed, the wall covering and repaint all of the walls of the Premises upon termination of this Rental Agreement.

21.7. Tenants shall be responsible to return the Premises to the Landlord in the same, or better condition, as was at the beginning of this Rental Agreement, normal wear and tear expected.

21.8. Tenants shall be responsible to leave the Premises in a "broom clean" condition and remove all of Tenant's possessions.

21.9. Tenants shall return ALL keys and remote entry devices to the Landlord upon termination of this Rental Agreement. If Tenant does not return the keys and remote entry devices, including but not limited to door, deadbolt, mailbox, shed/storage, garage, security gate, Tenants shall be charged for the re-keying of the Premises or replacement of remote devices and the cost thereof shall be withheld from Tenants' security deposit.

21.10. Tenants agree not to use the unit for unlawful purposes nor engage in or permit unlawful activities in the unit, the common areas, or on the Property grounds, and to abide by any and all rules and regulations applicable to the Premises.

21.11. During the term hereof, Landlord reserves the right to adopt additional rules and regulations concerning the use and occupancy of the Premises by giving Tenants 30 day's prior written notice.

21.12. Tenants shall not install any electric wires, telegraphs, telephone, antenna, satellite dishes, aerial wires or other equipment or apparatus inside or outside the Premises, Building, or Property, without the Landlord's prior written consent which the Landlord has the right at Landlord's sole discretion not to consent to.

21.13. Tenants shall not utilize a barbeque, or any other outdoor cooking appliance, within 10 feet of the building, as required by insurance company.

21.14. No smoking is allowed inside of the property. If tenants smoke inside or if Landlord smells smoke inside the property, the Tenant's entire security deposit shall be forfeit to cover the expense for the removal of smoke. If security deposit is not adequate to cover the expenses, Tenants will be held liable and will be charged for any and all costs associated with smoke repair/rehabilitation and fumigation.

21.15. Tenants shall abide by and be responsible for Tenants' guests to abide by all provisions of this Rental Agreement as it relates to behavior on premises.

21.16. Tenants accept full responsibility for all costs related to Tenants' violation of Rules & Regulations and Landlord's necessity to cause performance.

**22. DESTRUCTION OF PREMISES.** If the Premises are damaged or destroyed by fire or casualty to the extent that use of the Premises is substantially impaired, the Tenants may vacate the Premises and Tenants shall notify the Landlord in writing within fourteen (14) days thereafter of Tenants intention to terminate this Rental Agreement, in which case this Rental Agreement terminates as of the date of the vacating. Unless the Premises be so damaged that the Landlord shall

Tenants Initials
Landlord/Agent Initials

decide not to repair or rebuild, then ___on Landlord shall cause the damage to be ___mptly repaired, but if the Premises, or building of which these Premises are a part, be so damaged that the Landlord shall decide not to repair or rebuild, either temporarily or permanently, then this Rental Agreement shall terminate and the monthly rent shall be paid up to the time of the fire or other casualty with no further obligation of either party hereunder to recognize this Rental Agreement if the building be later repaired or rebuilt, and Tenants' security deposit shall be returned to Tenants promptly, subject to Article 6 herein.

**23. DEFAULT. IN THE PAYMENT OF RENT:** In the event the Tenants fails to pay rent by the 5th of the month, Landlord has the right to seek immediate recovery of possession of the property without additional notice to the Lessee.

23.1. Upon the failure of the Tenants to comply with (1) the terms of this agreement, (2) any notice sent by Landlord regarding compliance with the terms of this agreement, (3) the rules and regulations attached to this unit, or (4) other governmental laws or regulations Tenants will be given a specified period of time to vacate the property as set forth in the URLTA or be subject to eviction.

23.2. Any rent accepted by Landlord after a Tenant default is accepted under a full reservation of rights.

**24. ABANDONMENT.** If Tenants have abandoned the Leased Premises as defined by the Tennessee Uniform Residential Landlord and Tenant Act (the "Act"), Landlord reserves the right to avail itself of all remedies available pursuant to that Act.

**25. VEHICLES.** Landlord may have any unauthorized or nuisance vehicle towed or otherwise removed from the Premises upon giving ten (10) days written notice by posting same upon subject vehicle. Landlord may also have Tenants', guest's or trespasser's vehicle immediately towed if such vehicle is in violation of posted signage relative to traffic and parking restrictions, including but not limited to traffic lanes, fire lanes, fire hydrants, handicapped areas, or blocking of trash receptacles.

25.1. Owner or Rental of a vehicle that has been removed pursuant to this section may make application to take possession of such vehicle and remove such vehicle from the place to which it has been removed or stored by paying all costs associated with the towing and storage of said vehicle.

25.2. Tenants and his/her guests and invitees shall not park automobiles, trucks, campers, trailers, boats, or any other vehicles on the grass or so as to block other driveways of the adjoining properties.

25.3. Tenants shall not leave any disabled automobiles, trucks, campers, trailers, boats, or any other type of vehicles on the Property.

25.4. Tenants shall not park trucks, campers, trailers, boats, or any other oversized vehicles on the Property.

25.5. Tenants must register all vehicles for said premises to Landlord.

25.6. ALL vehicles shall be legally registered with updated tags. Inoperable vehicles left in excess of three (3) days and/or vehicles not legally registered are subject to be towed at the Tenants' and/or vehicle owner's expense.

25.7. Tenants shall park only in marked/designated parking areas. Emergency lanes must be kept clear for emergency vehicles. Vehicles parked outside of designated areas are subject to tow at the Tenants' and/or vehicle owner's expense.

**26. NOTICES.** Tenants expressly agree to receipt of notices from Landlord via email. Any notice which either party may or is required to give, shall be considered given or served if (I) delivered in writing personally, (II) via email to/from dvinsant@yahoo.com or tenant emails at the email addresses listed with Tenants' signatures (III) sent by United States Postal Service, postage prepaid certified return receipt requested, or (IV) sent by overnight mail by a reputable national overnight carrier such Federal Express, to Tenants at the Premises or to Landlord's Agent at such place as may be designated by either party. Date of service of notice served to the other party personally shall be the date such notice is delivered to the other part., Date of service of notice sent by United States Postal Service shall be three days following the date on which such notice is deposited in a Post Office of the United States Post Office Department. Date of service of notice sent by overnight mail by a reputable national overnight carrier such Federal Express shall be the following business day. Date of service of notice sent via email shall be the date the email was sent.

**27. SUBORDINATION AND ATTORNMENT.** Tenants agree that Tenants' interest in the leased premises shall be and remain subject and subordinate to the lien of each and every person in future mortgage, deed of trust, security instrument, or other lien applicable to the leased premises, the apartment complex and/or its contents, and any extensions or renewals thereof, and to all advances made or hereafter to be made on the security thereof, irrespective provision shall be self-operative, and no further instrument of subordination shall be required by any third party, and in confirmation of such subordination, Tenants agree to execute and deliver, upon demand by Landlord, such further instrument or instruments evidencing such subordination of this lease to any such mortgage, deed of trust, security instrument, or other lien as may be requested by Landlord. Upon the failure or refusal to execute such an instrument or instruments, the same shall constitute an event of default.

3223851.2

Tenants Initials
Landlord/Agent Initials

Case 3:17-bk-33245-SHB   Doc 71-2   Filed 04/03/18   Entered 04/03/18 11:33:12   Desc
Case 3:17-bk-33245-SHB   Claim 5   Filed 02/22/18   Desc Main Document   Page 17 of
proof of claim   Page 17 of
22

**28. LEAD BASED PAINT.** If the structure was built prior to 1978 it may contain lead-based paint and Tenants acknowledge they have received a lead-based paint disclosure.

**29. INDEMNIFICATION.** Landlord shall not be liable for any injury to persons, or damage to the Premises done or caused by Tenants or his agents, employees, invitees, or other persons permitted by Tenants to be on or about the Premises, Building, Property, or any part thereof, and Tenants agree to indemnify and save Landlord harmless from all claims, mechanics liens, damages, demands, actions, cost, charges, and all expenses (including reasonable attorney's fees) arising out of or by reason of the occupancy of the Premises by Tenants during the term of this Lease, except to the extent for which such injury, damage or loss is the fault of the Landlord, or an employee or agent of the Landlord.

**30. SECTION CAPTIONS.** The captions appearing under the article number designations of this Rental Agreement and numbers are for convenience only and are not a part of this Rental Agreement and do not in any way limit or amplify the terms and provisions of this Rental Agreement. It is agreed that while the plural pronoun only is used in the foregoing this Rental Agreement, it shall be construed as either masculine, feminine, or neuter, and as either singular or plural, as might be applicable to the parties to this Rental Agreement.

**31. EMINENT DOMAIN.** If the leased premises of any part thereof be taken by eminent domain, this lease shall, at Landlord's option, terminate. Upon termination, Tenants shall pay the rent up to the time of termination of this lease, and thereafter Tenants shall have no claim against Landlord by reason of such termination. Tenants shall have no claim against any award or awards made to Lessor by reason of any taking by eminent domain.

**32. ASSIGNMENT/SUB-LEASE.** Tenants shall not have the right or authority to sublease the premises or any part thereof, or to transfer or assign this lease without written consent of the Landlord. Tenants agree that should the leased premises be sold or title thereto transferred or conveyed, or should this lease be assigned, then the Tenants shall be released and discharged from all of the covenants and obligations of the Landlord hereunder, and thereafter the Tenants' right and remedies for any breach of obligations imposed upon Landlord shall be against the person, firm, or corporation succeeding to the rights of Landlord.

**33. APPLICATION.** Tenants' Application is an important part of his lease, incorporated by reference and made a part hereof. Any misrepresentation, misleading, or false statements made by Tenants and/or later discovered by Landlord may void said Lease Agreement, at option of Landlord.

**34. SAVINGS CLAUSE.** If any provision of this lease is determined to be in conflict with the URLTA thereby making said provision null and void, the nullity shall not affect the other provisions of this lease which can be given effect without the void provision, and to this end the provisions of this lease are severable.

**35. ATTORNEY'S FEES.** Should Landlord deem it necessary or appropriate to retain an attorney for the collection of rent, damages, or to enforce or defend any position of this lease, Lessee agrees to pay, in addition to his other obligations hereunder, all expenses, including court and appellate costs, costs of collection and reasonable attorney's fees. It is mutually agreed by and between Tenant and Landlord that they do hereby waive trial by jury in any action, detainer or otherwise in connection with the Lease Agreement.

**36. ENTIRE AGREEMENT.** The foregoing constitutes the entire agreement between the parties and may be modified only by a written amendment signed by both parties.

I the undersigned warrant that Landlord and Tenants have the legal authority to execute this Rental Agreement. In Witness Whereof the parties have signed their name on the day and year written below and acknowledges receipt of a copy hereof. The date of this agreement shall be the date the last party hereto signed.

| Tenants | 5/13/15 | | email address | mobile phone#/carrier |
| Date | | | | |

| Tenants | 5/13/15 | | email address | mobile phone#/carrier |
| Date | | | | |

By: _____   5/13/15
For ABC Professional Management, Agent for Owner   Date

Revised April 2015                                   7

Tenants Initials _____ CD
Landlord/Agent Initials _____

3223851.2

Docket No. __014480__

Plaintiff(s) PHR, LLC
    151 Keeble Avenue
    Knoxville, TN 37920

Pl. Atty. Carlos A. Yunsan    Tel # 865-980-1612

VS

Defendant(s) Deanne Vinsant
    519 Sherwood Drive
    Maryville, TN 37801

JBH     FILED

APR 1 0 2017

TOM HATCHER
GENERAL SESSIONS COURT

**Officers Return:**

❏ I certify that I have served this Summons by reading same to all Defendants named above or by _____

_____

and citing ❏ Defendant ❏ Defendants for trial on the 28th day of April, 2017, at 9:00 A. M

❏ Diligent search made and Defendant(s) not to be found in my county, because _ret 4/25/17_

_Not at that address_

Date of Service: _BCSO_
(Sheriff/Deputy) _____

# Civil Warrant
### State of Tennessee, County of Blount

**Tom Hatcher**
**General Sessions Court Clerk**

## TO ANY LAWFUL OFFICER TO EXECUTE AND RETURN:

Summon the named Defendant(s) to appear in the Blount County General Sessions Court, at the Blount County Justice Center to answer a civil suit being brought by the named Plaintiff(s), for $ __under $25,000__ as indicated below, in an action based on: _breach of contract for management of property located at 221 Amerine Avenue, Maryville Tennessee 37804 (a copy of the Rental Agreement is attached hereto)._

_____

_____

_____

_____

Issued this _10_ day of _April_ 20 _17_

Tom Hatcher, Clerk of the General Sessions Court
by: _____ JB Hobbs _____ D.C.

## JUDGMENT ON THE ABOVE COMPLAINT

    ❏ Contested    ❏ Agreed    ❏ Default    ❏ Plaintiff's reported agreement

❏    Judgment in the amount of $_____ and all costs and taxes is granted to Plaintiff(s) against Defendant(s) _____ for which execution may issue.

❏    Dismissed _____ prejudice. Cost are taxed to _____
    Basis for dismissal:
    ❏ Findings in favor of Defendant(s) after trial.    ❏ Plaintiff's non-suit.
    ❏ Plaintiff's failure to prosecute.    ❏ Compromised and settled
    ❏ Officer's return no to be found.    ❏ Paid before Court.

This _____ day of _____, 20_____.    Judge: _____

## INSTALLMENT PAYMENT ORDER

_____ is allowed to pay judgment and costs at the rate of $_____ _____ beginning _____. Garnishment stayed pending compliance with this order.

This _____ day of _____, 20_____.    Judge: _____

Case 3:17-bk-33245-SHB    Doc 71-2    Filed 04/03/18    Entered 04/03/18 11:33:12    Desc
Case 3:17-bk-33245-SHB    Claim 5    Filed 02/22/18    Desc Main Document    Page 19 of
proof of claim    Page 19 of 22
22

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

DEANNE E VINSANT
519 SHERWOOD DRIVE
MARYVILLE, TN 37801

9590 9403 0764 5196 5619 82

2. Article Number. (Transfer from service label)

7015 1730 0000 8563 3805

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    □ Agent
                      □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Cody Weaver

D. Is delivery address different from item 1?    □ Yes
   If YES, enter delivery address below:    □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery (over $500)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Return Receipt for Merchandise
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053    PHP (CAY)    Domestic Return Receipt

## KIZER & BLACK, ATTORNEYS, PLLC

329 CATES STREET

MARYVILLE, TENNESSEE 37801-4903

TELEPHONE: (865) 982-7650

FACSIMILE: (865) 982-5776

January 26, 2017

DAVID T. BLACK
MARTHA S. L. BLACK
J. KEVIN RENFRO
MELANIE E. DAVIS
MATTHEW C. HARALSON
P. ANDREW SNEED
KELLY LOVE MANNING*
ASHLEY E. BENTLEY
CARLOS A. YUNSAN
CATHY H. MORTON

BEN W. KIZER
(1920 – 1996)

JOHN T. MCARTHUR,
RETIRED

*ADMITTED IN GEORGIA

Writer's Direct Number: (865) 980-1612
Writer's Direct Fax: (865) 980-6143

**VIA FIRST CLASS U.S. MAIL AND
CERTIFIED MAIL 70151730000085633799**

Deanne E. Vinsant
P.O. Box 4482
Maryville, Tennessee 37802

**VIA FIRST CLASS U.S. MAIL AND
CERTIFIED MAIL 70151730000085633805**

Deanne E. Vinsant
519 Sherwood Drive
Maryville, Tennessee 37801

   Re: 221 Amerine Road, Maryville, Tennessee

Dear Ms. Vinsant:

This firm has been retained by PHR, LLC (the "Landlord"), owner of the real property located at
221 Amerine Road, Maryville, Tennessee 37804 (the "Property"), with respect to the agreement
you entered into with the Landlord to manage the Property as its agent. The purpose of this letter is
to demand payment of the rents you collected on behalf of but never forwarded to the Landlord.

You (d/b/a ABC Professional Management, Inc.) entered into a Rental Agreement for the Property
with Daniel Keller and Chrystal Davila (the "Tenants") on or about May 13, 2015, expressly as an
agent for the Landlord. I enclose herewith a copy of the Rental Agreement, bearing your signature.
The Tenants paid you directly in advance a total of $15,250.00, consisting of $13,800.00 as rental
payment for the term of the agreement, June 1, 2015 through May 31, 2016, and of $1,450.00 as a
security deposit and fees. This payment has been confirmed by the Tenants.

In addition, after the Rental Agreement had expired on May 31, 2016, you received directly from
the Tenants two (2) additional payments of $1,150.00 each for the months of June and July 2016,

Case 3:17-bk-33245-SHB    Doc 71-2    Filed 04/03/18    Entered 04/03/18 11:33:12    Desc
Case 3:17-bk-33245-SHB    Claims 5    Filed 02/22/18    Desc Main Document    Page 21 of
proof of claim    Page 21 of 22
22

Ms. Deanne E. Vinsant
January 26, 2017
Page Two

respectively. Altogether, you received as agent for the Landlord – and have unlawfully kept for yourself – a total of $17,550.00.

Demand is hereby made for payment in full of payments owed to the Landlord in the total amount of **$17,550.00 on or before February 13, 2016**. Said payment shall be sent directly to my office but made payable to PHR, LLC. Be advised that if payment of the total amount owed to the Landlord is not received **on or before February 13, 2016**, my client will be forced to institute a legal action against you for breach of contract. In addition, be advised that such action may also include claims under the Tennessee Consumer Protection Act for engaging in acts and practice that were deceptive to both the Landlord and the Tenants, which may lead to an award of treble damages and attorney's fees in addition to pecuniary damages. Be further advised that my client reserves the right to submit a complaint to the Tennessee Real Estate Commission for your actions in this matter. My client is well-aware that your affiliate broker licensed is currently suspended and that you have been fined by the Commission in the past for making willful misrepresentations.

I look forward to a prompt and fair resolution of this matter. Please contact me immediately if you wish to discuss further. If you are represented by counsel, please have your attorney contact me.

With kindest regards, I am

Very truly yours,

Carlos A. Yunsan

Enclosure

cc: PHR, LLC

2

Case 3:17-bk-33245-SHB   Doc 71-2   Filed 04/03/18   Entered 04/03/18 11:33:12   Desc
Case 3:17-bk-33245-SHB   Claim 5   Filed 02/22/18   Desc Main Document   Page 22 of
proof of claim   Page 22 of 22
22

# KIZER & BLACK, ATTORNEYS, PLLC

217 E. BROADWAY AVENUE

MARYVILLE, TENNESSEE 37804

TELEPHONE (865) 982-7650

FAX (865) 982-5776

WWW.KIZERBLACK.COM

**RECEIVED**

FEB 2 2 2018

U.S. BANKRUPTCY COURT
Knoxville, Tennessee

February 19, 2018

WRITER'S DIRECT LINE: (865)980-1612
WRITER'S DIRECT FAX: (865) 980-6143

William T. Magill
Clerk of Court
United States Bankruptcy Court
Howard H. Baker Jr. US. Courthouse
Suite 300, 800 Market Street
Knoxville, TN 37902

Re:   *Proof of Claim Filing*
*Deanne Elizabeth Vinsant No. 3:17-b33245*

Dear Mr. Magill:

Please find enclosed a Proof of Claim to be filed in the above-referenced bankruptcy.  Please
return a "Filed" stamped copy to my office in the enclosed envelope.  If you have any questions,
do not hesitate to call.

I am,

Very truly yours,

Carlos A. Yunsan

CAY:emb

Enclosure

cc:      PHR, LLC